Next case for argument is Hasbrock v. Bernhoft, Mr. Hughes. May it please the court, my name is Craig Hughes. I represent the appellates in this case, Orvil and Evelyn Hassebrock. In this case the district court err when it granted summary judgment in favor of all defendants on all plaintiffs' claims based on the appellant's alleged failure to timely make their expert disclosures. I don't think it's an alleged failure. It's a failure, right? Your Honor, it's our position that it's not a failure and that Rule 26A2D clearly controls in this case. Rule 26A2D states that in the event the court does not enter an order specifying the dates by which expert disclosures are to be made and if there is not a stipulation then the 90-day time limit applies. The magistrate issued the order in January and said specifically it was May 10th was the discovery cutoff and you recognized that in several filings when you were asking for additional time. The order in January, which is document number 101, basically stated discovery shall be completed by May the 10th of 2014, not all discovery, and with respect to the contention that in various pleadings I recognized that cutoff, I did recognize that that was the discovery cutoff, but the discovery cutoff is not equivalent to the expert discovery cutoff or the expert disclosure cutoff. The magistrate in this case was charged with setting the expert discovery deadline and the expert disclosure deadline and the magistrate stated rather candidly at the hearing on May the 14th, the court will take some responsibility here that we didn't have in the discovery order a deadline for experts. The next day in his order of May the 15th of 2014, document 158, the magistrate wrote, in this particular matter the court did not enter a scheduling order that would set forth the deadlines for disclosing and deposing expert witnesses. At that point, the default deadline that's provided by Rule 26A2D kicks in. That deadline provides that disclosures must be made no later than 90 days prior to the trial date. Judge Wilkerson calculated that date would have been June the 3rd of 2014. Our expert was identified on May the 13th of 2014. Wait a minute. On April 9th, you filed a motion. In the motion, you asked for additional time to disclose the identity of your expert. And in that motion, you said that the information will be forthcoming, the delay is minimal, and it will be well before the discovery cutoff of May 10th. That's in conjunction with asking for additional time to disclose your expert. So that's the deadline for disclosing your expert, and you're admitting that in that motion, aren't you? Your Honor, I don't believe that I am admitting that. I believe the motion on April 9th, we were asking for permission to disclose the expert without his report. We had already retained the expert, but there was significant time and money that needed to be extended for him to prepare his report. And in that motion, if the motion is read carefully, at no point did I acknowledge that May the 10th was the expert discovery cutoff. And I would even submit to the court, even if I had, what matters is what do the rules say. And Rule 26A2D is very clear. If the court does not set a specific expert discovery or disclosure cutoff, that applies. We cited the Vennial case. If you were using the default rule, why did you need to file the motion for an extension of time? That's a very good question. And with respect to the motion for extension of time that I filed on May the 13th, if I could explain briefly the thought process behind that. That's after the discovery cutoff. That was after the discovery cutoff. On May the 12th, the defendants, the Bernhofs filed, the Bernhofs law firm and Robert Bernhofs, filed a motion for summary judgment in which they alleged, among other things, that the local rules of the Southern District of Illinois required that the expert disclosures be made by May the 10th. They also made reference to binding precedent in this circuit that that was the deadline as well. Thinking that perhaps I had miscalculated the deadline, out of an abundance of caution, that day I filed, disclosed the expert's identity, and asked for an additional 20 days. We had the hearing on the 14th, in which the magistrate clearly indicated that he agreed with the Bernhofs that our disclosures were late. Therefore, having been put on notice that my entire case was about to be tossed out for allegedly missing this deadline, that would have a tendency to focus the mind. Went back, read the local rules. The local rules, the Southern District of Illinois, do not establish a cutoff for the designation of experts, nor is there a local rule, Southern District of Illinois, that all discoveries shall be completed 115 days before trial. There's a timetable that precedes the local rules that states that the discovery cutoff shall be 115 days. And with respect to binding precedent and authority in this circuit, the magistrate's opinion from the Northern District of Illinois, that case is clearly distinguishable in that the court in that case set a separate fact discovery cutoff deadline and a separate expert discovery cutoff deadline. In that case, the party against whom summary judgment was rendered designated their expert a day before the expert discovery deadline expired. We don't have that in this case. Well, right. We didn't have separate dual track discovery cutoffs here, one for fact discovery and one for expert discovery. We had one expert, or excuse me, one discovery cutoff date of May 10th. That's correct. Which implicitly means all, even though it didn't say all. I know you placed a lot of weight on the fact that that order didn't say all discovery, but in the absence of some separate track for expert discovery, which was unstated in the magistrate judge's scheduling order, everyone was operating under the assumption, including you, that the discovery cutoff was May 10th and that was all discovery. Otherwise, there would have been no reason to file a motion for extension of time in April in anticipation of that discovery cutoff to get more time to work with your expert. Again, the motion for extension of time was to disclose the expert's identity without his report. That's what we were asking. Do you think the rules distinguish between disclosing the identity of the expert and his report? I do not. Well, then if you ask for the one, why didn't you ask for the other? In fact, you did, didn't you? Didn't you promise that your expert report would be disclosed by the end of April? We did, Your Honor, and it turns out we were not able to get it done within that time. And when there's a citation somewhere, I believe in the Appley's brief, that I made a comment that was... Well, that's kind of absurd because you filed that statement that you were going to get the expert report by the end of April, on April 17th, okay, with 13 days left. That's correct. You didn't know at that point how long it would take to produce the report? We grossly underestimated the amount of time that it would take. When was it produced? The report was produced on May the 28th. And again, it's the other cases cited by the Appley's... That is, by asking on April 9th for time, you know, extra time, wasn't that a... The underlying assumption was that there was a deadline for the, both for the disclosure of the expert's identity and for his report. Your Honor, the pleading may not have been artfully drafted. What we were asking was to disclose, go ahead and disclose the expert's identity in April without his report. You were asking for permission for something, right? Which perhaps we should not have done because... Well, too bad. You asked for it, right? That's correct, Your Honor. Well, I don't know why you're not bound by that. Because it's our... Acknowledge that whatever the rules say, you were under a deadline to submit everything by May 10th. Acknowledge that the discovery cutoff was May the 10th, Your Honor. But at no point did I acknowledge that the expert disclosure... Well, you had to be because you were asking for permission to delay. You don't ask for permission unless you acknowledge the court's authority. We were asking for permission to disclose his identity without the report. And if the pleading was an artfully drafted, I take responsibility. But that was the intent of the pleading. We wanted to identify the expert's identity. Why? Because the rule requires... What is it worth without the report? At that point, the defendants, perhaps the appellees, could have engaged in a discovery, could have tried to set the... How could they engage in discovery without his report? After the report was produced in May, the court could have set a discovery. Why were you so intent on having his identity produced before his report? So that there would be no question as to the timeliness of his disclosure. Well, there certainly is a question. I believe my time is up. Okay. Well, thank you, Mr. Hughes. Mr. Bernhoft. Good morning, Your Honors, Counsel. I'm Robert Gerald Bernhoft, and with the mutual consent of all of the accountant and attorney defendants, I make argument on behalf of the defendants' appellees here in this appeal. I think it's important to note that in the August hearing before District Court Judge Rosenstegel, that the Hassebrocks explicitly acknowledged that they took the position in Hassebrocks unapologetically said, that's what we believed then. We don't believe it now. We were wrong. And now we're going to interpret 26A2D1 as being in conflict with the local rules. And if you look at Judge Rosenstegel's opinion, she addressed this issue briefly, but it did require some addressing. And the argument that was newly minted for the District Court was that, well, the SDIL local rules are in material conflict with the federal rules, so the federal rule controls. And that's simply not a reasonable interpretation of the local rules, nor the customs of the court, nor the discovery practices that judges and federal litigators are familiar with. I would note that there's three orders that were issued, all three determining the close of discovery. Record at 23, record at 77, record at 101. Perhaps the most significant of which was Magistrate Judge Wilkerson's January 17th order, where he expressly said, order all capitals in case there was any doubt about that, close of discovery is May 10th. And it's notable that Judge Wilkerson issued that order at the invitation and the request of the Hassebrocks for clarification. So there was no doubt in anybody's mind what that meant. Now, the Hassebrocks make a great deal of time and effort arguing that, well, apparently, according to their position, as best I can understand it, federal judges can no longer, District Court judges can no longer say discovery closes on a particular date without adding the magic word all before discovering. That's unreasonable. There's just no reasonable interpretation that would suggest that. Let me ask you a question, Mr. Brunoff. Yes, sir. You were deposed in this case, right? Yes, Judge. But you were deposed in late May after the May 10th deadline, correct? Yes, Judge. And it seemed to me like, charitably, they had some difficulty in actually securing your deposition. And my question is this. Is it reasonable to expect, how is an expert supposed to come up with their opinion on the quality of the work that you did without knowing what you were going to say in your deposition? Yes, Judge Simon. I appreciate the question. First, the Hassebrocks had open, unlimited, unfettered discovery since September of 2014. I'm sorry, September of 2013. The case was on the docket down there for about four years. So they had approximately eight months to conduct discovery. And I always wondered why they waited to the very last minute to take the deposition of what I would think would be an important attorney-defendant. So that is their calculated strategy of discovery. Frankly, if I would have been prosecuting the case, I would have deposed the accountant and attorney-defendants in September, October, November of 2013, and then followed up with written discovery. But that was the strategy. But they say they attempted to do that, and a number of times you didn't show up at the deposition, or they had trouble scheduling it, or one thing or another. And so now they're backing up against this deadline, and their expert doesn't know what the principal defendant is going to say as to the quality of the work he provided. Yeah, Judge Simon, those statements in the appellant's brief are false. Is that not right? Okay. Those statements are false. And we said that in our appellant's brief, and we stand by that statement. You know, a busy litigator's schedule is six to eight weeks out, similar to federal judges. And as Counsel for the Hatshepsut knows, there was a shoulder reconstructive surgery that was scheduled in the middle of April that was undergone. That's why the deposition could not be taken. In terms of not showing up at a deposition, counsel simply would notice these depositions, refuse to talk to lead attorney Triton, no telephone calls. He would just notice them up, and had a very busy travel schedule before April 18th in the surgery. And this was known. Magistrate Judge Wilkerson, frankly, snarked at this, at the oral argument, because the Hassebrooks demanded medical records, travel records, and he found that to be not only unseemly but unprofessional. And if there's noting that, in spite of the fact that my deposition was ultimately taken by court order, the expert didn't make use of it. The expert report was disclosed on the 28th of May and the 30th of May record at 170 and 171. My deposition was May 23rd. And interestingly, they don't argue my deposition transcript at all during any of their opposition papers. So if it was going to be so dramatically important, they didn't use it at all. In fact, even though all these documents were struck, the transcript of my deposition was never included in the record by the Hassebrooks. So I can't imagine it was important to them. Some of the problems here in the fits and starts of this case is that it seems to have been proceeding on a parallel track with the criminal case. Is that right? Well, Judge Sykes, what happened is that Mr. Hassebrook hadn't filed tax returns in a couple of decades. And so our representation involved representing him during an ongoing grand jury criminal tax investigation. And so that was the nature of the representation. Right. But the suit was filed approximately the same time as the indictment came down, right? To clarify, actually, the suit was filed after Mr. Hassebrook's trial convictions. We didn't represent him at trial.  He had different attorneys. So after the criminal case had closed? No, actually, after the jury verdict of guilty, but prior to sentencing, Mr. Hassebrook filed this case. And we cite to this, and we include in the record from the SDIL, the sentencing transcript where Mr. Hassebrook attempted to throw the attorney and accountant defendants under the bus for his criminal tax fraud conviction. But of course, we had nothing to do with Mr. Hassebrook not filing returns or paying tax. And the sentencing judge was unimpressed. And so it appears that what started off as a bad sentencing gambit turned into four years of vexatious litigation. And we were firm about our statements in our brief about how that looked, and we stand by them today. I'd also point out that under the standard of excusable neglect at 6B1B, there was no excusable neglect. There was ample time to move prior to the close of discovery for any relief or remedy that they needed. A wise law professor once opined to me in a class many years ago that there's a time for all litigation to die. And I think it's well past time for this litigation to be over, and Judge Rosenstegel's decision should be affirmed. If the panel has no further questions. Okay. Thank you very much, Mr. Bernhoft. Mr. Hughes, your time has expired, but you can have another minute or so if you want. Thank you, Your Honor. Just briefly, I would like to address Mr. Bernhoft's recitation of the events that led to the scheduling of his deposition. There are a number of emails attached to exhibits to motions that are filed in the record. Mr. Bernhoft's attorney, Mr. Troyden, was contacted, I contacted him in February, asking for dates. I was given several dates when he would not be available. Every time I would come back with another date, well, is he available on this date? I would then get another excuse, travel excuses, medical excuses. Finally... What difference does it make? According to Mr. Bernhoft, you didn't think his, the transcript of his deposition was interesting? Your Honor, the difference that it makes is apparently the court has some question as to what transpired, the fact that his deposition was taken so late. I'm simply trying to set the record straight on what happened. I then traveled from my office to Austin, Texas, where his office is located. He failed to appear for the deposition. It was only after Judge Wilkerson ordered him to appear that it took place. Thank you. Okay. Well, thank you to both counsel. Next case for argument...